STATE OF VERMONT

ENVIRONMENTAL COURT

}
Appeal of Denizot, et al            }            Docket No. 91-6-03 Vtec
}

Decision and Order

Appellants Lee Buik Denizot, David and Janice Bartley, John and Regina Meigs, and Alan and Lynne Fletcher appealed from a decision of the Development Review Board (DRB) of the Town of Fairfax, approving Appellee Brian Burnor=s subdivision application. Appellants represent themselves; Appellee-Applicant Brian Burnor is represented by Joseph F. Cahill, Jr., Esq. The Town did not enter an appearance in this appeal.

Of the eight issues raised in Appellants= statement of questions, all but Question 6, a portion of Question 4, and a portion of Question 7 were addressed on summary judgment. An evidentiary hearing was held on the remaining issues in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence, and the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows

Appellee-Applicant=s property is located on the north side of Rood Mill Road, which

runs east and west in this location.  The property is located in the Agricultural and Forest Resources zoning district; a portion of the property constituting the 100-year flood plain surrounding the stream is also located in the Shoreland (flood plain) overlay zoning district.

In an earlier four-lot subdivision Appellee-Applicant created three two-acre lots proposed for single-family residences (Lots 2 through 4 as shown on the present subdivision plan), and retained the large parcel of remaining land as Lot 1, with one house site. In the present appeal he proposes to further subdivide the 59.81-acre parcel retained in the previous subdivision into a total of six parcels.  Five of the parcels are building lots, each in the two- to three-acre size range (denominated Lots 5 through 9 on the present subdivision plan) intended for single-family residences (one of which already exists on Lot 5).  The remaining land of approximately 48 acres is denominated as Lot 1, and includes a house site near the subdivision roadway.  The property as a whole also contains areas of land suitable for agriculture, areas of ledge, wetlands, a stream, and areas of land with steep (over 25%) slopes unsuitable for building, most of which is located on the retained Lot 1.  All six of the house sites are located to the southwest of the stream on the property.  Small portions of Lots 6 and 8 and a large portion of Lot 1 are located to the northeast of the stream.  The plan provides three means of access onto different portions of Lot 1: one via a right of way from Rood Mill Road running between the Bartley/Allen property and existing Lot 4, one via the subdivision roadway onto the house site for Lot 1, and one from the northwest end of the subdivision roadway onto the northwesterly portion of Lot 1.

Question 4

The revised proposed subdivision plan as presented at trial (Exhibit A) now meets not only the two-acre density requirement, after the undevelopable land is deducted for the subdivision as a whole, but also meets the two-acre minimum lot size after easement areas are deducted from specific lots. Most of the area containing the soils[1] most suitable for agriculture, as shown on Exhibit B, is not affected by the proposed building lots.

Question 6

Question 6 claims that the subdivision is proposed for a parcel of >productive agricultural land= and that it therefore fails to meet the applicable subsections of "703 and 704 (that is, "703(A), 703(F), and 704(G)). While the term Aagricultural use@ is defined in the ordinance as Aland used for cultivating the soil and producing crops or raising livestock, for the purpose of economic gain, . . .@ neither the term Aagricultural land@ nor the term Aproductive agricultural land@ is defined in the ordinance. Appellant Denizot claims that, as she hayed a portion of Lot 1 in the past, it constitutes >productive agricultural land= that should not be allowed to be converted to residential use. However, as appears on Exhibit B, the portions of the overall property most suitable for agriculture

---

[1] In any event, unlike Act 250 (10 V.S.A. Chapter 151), the Fairfax ordinances do not regulate on the basis of categories of Aagricultural soils.@

are largely located in the retained land on Lot 1, so that they are adequately preserved in this subdivision plan. Access to those areas from both sides of the stream has also been preserved by the plan.

Section 703(A) requires the proposal to Agive due regard for@ the preservation of existing site features, including Aagricultural lands.@ Section 703(F) requires subdivisions to be designed to Aminimize adverse [e]ffects@ upon Aproductive[2] agricultural . . . []land.@ Section 704(G) mandates the Planning Commission, and hence this Court in this de novo appeal, to encourage (and allows it to require) a subdivision lot layout that will conserve and/or maintain Aaccess to open areas in blocks large enough for productive agriculture and forestry.@ The subdivision layout shown in Exhibit A provides the means of access to the 48 acres of remaining lands in Lot 1, and allows access to the Lot 1 areas, including to the largest block of land in the northwesterly portion of Lot 1 potentially suitable for use as pasture or hayfield.

---

[2] The use of the term Aproductive@ in '703(F) and not in '703(A) suggests that '703(F) may provide a more limited protection. However, as the proposed subdivision meets the requirements of the ordinance under either formulation, we need not resolve whether '703(F) is meant to apply only to land currently in agricultural use as opposed to land potentially suited for agricultural use, or whether, as in '704(G), the economics of the parcel size is to be taken into account.

Question 7

The portion of Question 7 remaining after summary judgment is whether the five additional single-family house lots will place an Aunreasonable burden on the ability@ of the Town to provide police services to cope with the potential for noise and vandalism to be generated by those five households. '703(D). Nothing was presented in evidence to suggest that the subdivision of five additional lots, or the houses to be constructed on those lots, or the residents who will occupy those lots, will place any burden, much less an unreasonable one, on the ability of the Town to provide the police services necessary to address any potential noise or vandalism that may be generated by the use or occupants of those five lots.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant=s revised subdivision application, as shown in Exhibit A, is hereby APPROVED, subject to the conditions imposed by the DRB and found in Exhibit D.

Done at Berlin, Vermont, this 9th day of August, 2005.


_____

Merideth Wright
Environmental Judge